UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | |
|---|---|
| ARCH CHEMICALS, INC., and <br> HEBEI JIHENG CHEMICAL COMPANY, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CLEARON CORPORATION and OCCIDENTAL CHEMICAL CORPORATION, <br><br> Defendant-Intervenors. | Consol. Court No. 08-00040 |
| CLEARON CORPORATION and OCCIDENTAL CHEMICAL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ARCH CHEMICALS, INC., and <br> HEBEI JIHENG CHEMICAL COMPANY, LTD., <br><br> Defendant-Intervenors. | Consol. Court No. 08-00040 |

**PLAINTIFFS' RESPONSE TO MOTION FOR VOLUNTARY REMAND**

                             Peggy A. Clarke
                             Blank Rome LLP
                             Watergate
                             600 New Hampshire Avenue, N.W.
                             Washington, D.C.  20037
                             (202) 772-5922

                             Counsel for Arch Chemicals, Inc. and Hebei
                             Jiheng Chemical Company, Ltd.

Date:  April 5, 2010

## TABLE OF AUTHORITIES

Page

**Cases**

*Allegheny Ludlum Corp. v. United States*, 29 CIT __, 358 F. Supp. 2d 1334 (2005) .................... 4

*Lawrence v. Chater*, 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) ................................. 1

*SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) ............................................. 1, 2, 4

**Administrative Determinations**

*Steel Concrete Reinforcing Bars from the People's Republic of China*, 66 Fed. Reg. 33,522 (Dep't Commerce, June 22, 2001) .................................................................................. 2

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | |
|---|---|
| ARCH CHEMICALS, INC., and HEBEI JIHENG CHEMICAL COMPANY, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CLEARON CORPORATION and OCCIDENTAL CHEMICAL CORPORATION, <br><br> Defendant-Intervenors. | **Consol. Court No. 08-00040** |
| CLEARON CORPORATION and OCCIDENTAL CHEMICAL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ARCH CHEMICALS, INC., and HEBEI JIHENG CHEMICAL COMPANY, LTD., <br><br> Defendant-Intervenors. | **Consol. Court No. 08-00040** |

## PLAINTIFFS' RESPONSE TO MOTION FOR VOLUNTARY REMAND

Pursuant to the Order of this Court dated March 4, 2010, and the motion for voluntary remand filed by Defendant on March 15, 2010, Plaintiffs, Arch Chemicals, Inc. ("Arch") and Hebei Jiheng Chemical Company, Ltd. ("Jiheng"), respectfully submit the following response to the motion for voluntary remand.

Plaintiffs do not oppose a remand *per se*; indeed we consider it necessary; however, the remand requested by Defendant is overbroad, unfocused, and will not serve the purpose of an expeditious, accurate decision. In this instance, especially since one remand has already occurred, the process would be better served by a remand following this Court's ruling on the issues remaining before this Court. The Supreme Court has noted that remands can preserve the scarce resources of the court, flag issues that do not appear to have been fully considered, and enable the court to obtain Commerce's insights prior to ruling on the merits. *See Lawrence v. Chater*, 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996). The remands requested by Defendant, however, will not serve these purposes.

A remand is generally appropriate to correct errors. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). While Commerce has not explicitly stated that it erred in its calculation of the offset for Jiheng's recovered sulfuric acid by-product, it has certainly implied that and has requested a remand to enable it to recalculate the by-product offset assuming that Plaintiffs correctly characterized the evidence (we did). We agree that a remand for this issue is appropriate.

Whether a voluntary remand request should be granted where there is no confession of error is a more complex question, however, and the remainder of Defendant's remand request

1

relates to issues for which there is no confession of error and which do not fall neatly within the *SKF* categories. They most closely resemble remand requests regarding a change in policy or interpretation. As the Federal Circuit stated, "{t}he more complex question, however, involves a voluntary remand request associated with a change in agency policy or interpretation. . . . Although a court need not necessarily grant such a remand request, remand may conserve judicial resources, or the agency's views on the statutory question, although not dispositive, may be useful to the reviewing court." *Id.* Nevertheless, Defendant does not request remands for either a change in agency policy or a change in interpretation of agency policy. Therefore, there is no basis for according deference to Defendant's request.

Defendant's request for a remand to address the hydrogen gas by-product should reflect a request for a remand in order to apply Commerce's by-product policy, but does not. Instead it reflects a continued misunderstanding of the facts and of the very argument that Defendant seeks remand to consider. Specifically, Defendant sought a remand "for Commerce to reconsider the record and determine whether Jiheng's reporting of purchased hydrochloric acid as a factor of production sufficiently captures the costs associated with Jiheng's recycled hydrogen gas by-product to justify an offset." Defendant, Motion for Remand (March 15, 2010) at 4-5. The problem is that this misconstrues Plaintiff's argument. The reality is that hydrogen gas (regardless of its subsequent use) is a by-product of the chlor-alkali process – as Commerce determined on remand – and, as a result, all costs of producing the hydrogen gas are included in the costs attributed to the subject product. Commerce practice is to grant an offset for by-products produced during the POR whose cost is included in the reported costs, whether the by-product is then sold, stored in inventory, or recycled. *See, e.g., Steel Concrete Reinforcing Bars from the People's Republic of China*, 66 Fed. Reg. 33,522 (Department Commerce, June 22,

2001), Decision Memorandum Comment 5c (allowing offset for iron scrap that was not sold, but reintroduced into production), available at http://ia.ita.doc.gov/frn/summary/prc/01-15652-1.txt. Plaintiffs' argument in its Comments to the Final Results Upon Remand (Jan. 21, 2010) was that Commerce should apply its stated policy/practice regarding by-product offsets to the hydrogen gas offsets regardless of whether the hydrogen gas was sold, stored in inventory, or recycled as hydrochloric acid. Plaintiffs' comments about hydrochloric acid being reported as an input were to note that the hydrogen gas costs were being counted twice, yet Jiheng only requested a single offset. Pl. Comments at 7, 9-10. The Defendant however, is not seeking a remand to determine whether or not to apply its normal practice to the hydrogen gas by-product, but rather to consider whether an additional hurdle has been met – that not only were the by-product costs included in the cost of producing the subject merchandise once, but also that they were counted twice by the reporting of the hydrochloric acid.

This request should not be granted. This is not the first remand in this case but a second remand. The Court issued its original ruling July 13, 2009, and Commerce did not issue its remand results until more than five months later, after four extensions of time. Commerce sought and received additional information from Jiheng in August 2009; it has determined that that additional information was sufficient to establish that Jiheng was entitled to an offset under Commerce's by-product offset practice. A remand to apply a new standard, without addressing why the existing practice is not appropriate, will not resolve this issue. We ask that the Court address the issues raised in the comments to the final results upon remand in order to achieve finality.

Defendant also sought a remand with respect to the discharged chlorine gas by-product for two purposes: (1) because "Commerce has not adequately explained its offset for discharged

3

chlorine gas attributable to the production of subject merchandise versus discharged chlorine gas attributable to non-subject merchandise, including that generated during the liquefaction process" and (2) in order to "reconsider whether an offset is warranted for that portion of discharged chlorine gas that is recycled in the production of hydrochloric acid." Mot. for Remand at 7. Again, neither of these requests fall within the *SKF* categories of remand and neither should be granted.

No remand is warranted to explain Commerce's decision regarding discharged chlorine gas. *SKF* does not discuss remands to further explain an agency's findings. Nevertheless, while it may be reasonable to remand to Commerce for more explanation when there is little discussion in the decision under review because such remand would allow the Court the benefits of Commerce's insights prior to ruling, there is no such need in this case. Commerce fully explained its decision and no further "insight" is needed. *See Allegheny Ludlum Corp. v. United States*, 29 CIT __, 358 F. Supp. 2d 1334, 1344 (2005) (Commerce "must explain its rationale . . . such that a court may follow and review its line of analysis, its reasonable assumptions, and other relevant considerations").

Commerce fully addressed the issue raised by Defendant Intervenors in its remand results, providing its full analysis, and no further explanation is necessary. Defendant Intervenors did not object to the method of allocating the by-product offset granted, but rather they objected to the granting of a by-product offset for discharged chlorine gas generated during the liquefaction process at all on the grounds that it was produced outside the production process for the subject merchandise. *See* Defendant Intervenors, Comments of Clearon Corporation and Occidental Chemical Corporation Regarding Final Results of Redetermination Pursuant to Court

4

Remand (Jan. 21, 2010) at 2-5. In its remand results, Commerce twice addressed this issue. In its analysis section Commerce stated:

> While we agree with Petitioners' description of chlorine gas being discharged at the liquefaction stage, we disagree that this serves as an adequate basis for denying a by-product offset for the portion of chlorine gas discharged at this stage because the chlorine gas by-product had already been produced during the production of subject merchandise. As a result, it is irrelevant that some chlorine gas was not actually discharged until liquefaction took place. Accordingly, based on the Department's current practice of granting a by-product offset for the by-product produced during the POR, we are granting an offset for the amount of chlorine gas by-product that was produced, and then subsequently discharged during the POR. Further, because the discharged chlorine reported by Jiheng results from the chlor-alkali stage of production, where input FOPs are allocated between subject and non-subject merchandise, the by-products resulting from the input FOPs should also be allocated in a similar manner between subject and non-subject merchandise."

Final Results on Redetermination Pursuant to Court Order (Dec. 22, 2009) at 5-6. Commerce also addressed this in its comment section of the final results on remand, stating:

> In the instant case, Jiheng produces chlorine during one stage of its production process (the chlor-alkali stage) and discharges chlorine gas (Jiheng's claimed by-product) in two stages of its production process (purification and liquefaction of chlorine). . . . Based on the record evidence, the Department finds the Petitioners' explanation that a portion of the chlorine gas by-product is generated in the production of non-subject merchandise to be incorrect. While we agree with Petitioners' description of chlorine gas being discharged at the liquefaction stage, we disagree that this serves as an adequate basis for denying a by-product offset for the portion of chlorine gas discharged at this stage. The chlorine gas had already been produced during the production of subject merchandise.

*Id.* at 8-9 (citations omitted). Commerce provided a clear statement of its grounds for denying Defendant-Intervenors' position; the Court should have no difficulty following this line of reasoning, and no further explanation is needed. Subsequent to the quoted passages, Commerce also explained how it allocated the offset over both subject and non-subject merchandise, in a manner consistent with the treatment of the FOPs from the chlor-alkali stage and consistent with its treatment of the hydrogen gas by-product produced during the same stage – allocation

5

methodology that no one has questioned. Thus, there is no need for additional explanation; the Court need only determine whether Commerce's treatment of this by-product is supported by substantial evidence and otherwise in accordance with law (as we believe it will). The voluntary remand process should not be construed so as to relieve Commerce of its obligation to explain its position the first time around (or even the second time around in this case) because it can always seek a remand if anyone challenges its position.

With respect to the second chlorine gas point for which Commerce seeks a remand, no one has suggested that its decision to allow an offset for recycled chlorine gas is inconsistent with its practice (only that a portion should not have been offset at all – the first chlorine gas issue). *See* DI Comments at 2-3. Commerce's treatment of the recycled discharged chlorine gas was consistent with its stated policy of allowing a by-product offset for by-products that are produced during the POR regardless of whether they were sold or recycled (or, since this fall, stored in inventory). Therefore, Defendant has not made a compelling justification for granting this remand request.

In sum, while some form of remand must ultimately be issued here, if only to correct the clear sulfuric acid by-product error, any such remand should be issued after the arguments of the various parties have been addressed by this Court in order to narrow the remand and expedite a process that has already dragged on for a considerable time (it is now more than two years since this litigation was commenced).

Respectfully submitted,

Peggy A. Clarke
Blank Rome LLP
Watergate
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 772-5922
*Counsel for Plaintiffs, Arch Chemicals, Inc.
and Hebei Jiheng Chemical Company, Ltd.*

Date: April 5, 2010