Slip Op. 11-41

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                   :
ARCH CHEMICALS, INC. and            :
HEBEI JIHENG CHEMICALS,             :
CO., LTD.,                          :
                                    :
        Plaintiffs,                 :
                                    :
             v.                     :    Before: Richard K. Eaton, Judge
                                    :
UNITED STATES,                      :    Consol. Court No. 08-00040
                                    :
        Defendant,                  :
                                    :
             and                    :
                                    :
CLEARON CORPORATION and             :
OCCIDENTAL CHEMICAL                 :
CORPORATION,                        :
                                    :
        Defendant-Intervenors.      :
_____:
                                    :
CLEARON CORPORATION and             :
OCCIDENTAL CHEMICAL                 :
CORPORATION,                        :
                                    :
        Plaintiffs,                 :
                                    :
             v.                     :
                                    :
UNITED STATES,                      :
                                    :
        Defendant,                  :
                                    :
             and                    :
                                    :
ARCH CHEMICALS, INC. and            :
HEBEI JIHENG CHEMICALS,             :
CO., LTD.,                          :
                                    :
        Defendant-Intervenors.      :
_____:
```

Consol. Court No. 08-00040                                          Page 2

## OPINION AND ORDER

[The United States Department of Commerce's Final Results of Redetermination pursuant to remand are sustained in part and remanded.]

Dated: April 15, 2011

*Blank Rome LLP* (*Peggy A. Clarke*), for plaintiffs/defendant-intervenors Arch Chemicals, Inc. and Hebei Jiheng Chemical Company, Ltd.

*Gibson, Dunn, & Crutcher LLP* (*Daniel J. Plaine*, *J. Christopher Wood*, and *Andrea F. Farr*) for plaintiffs/defendant-intervenors Clearon Corporation and Occidental Chemical Corporation.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David D'Alessandris*); Office of Chief Counsel for Import Administration, United States Department of Commerce (*Brian Soiset*), of counsel, for defendant United States.

Eaton, Judge: One issue remains in this consolidated action[1] following a second remand. *See Arch Chemicals, Inc. v. United States*, 33 CIT __, Slip Op. 09-71 (July 13, 2009) (not reported in the Federal Supplement) ("*Arch Chemicals I*"); *Arch Chemicals, Inc. v. United States*, Consol. Ct. No. 08-00040, Order (Apr. 22, 2010) (granting additional voluntary remand).

Plaintiffs/defendant-intervenors Clearon Corporation and Occidental Chemical Corporation ("defendant-intervenors"),

---

[1] This action includes court numbers 08-00040 and 08-00043. *See Arch Chemicals, Inc. v. United States*, Consol. Court No. 08-00040, Order (May 12, 2008) (consolidating cases).

Consol. Court No. 08-00040                                          Page 3

domestic producers of chlorinated isocyanurates,[2] challenge the grant of a by-product offset to Hebei Jiheng Chemical Company, Ltd. ("Jiheng") for the portion of chlorine gas discharged during chlorine liquefaction.  They ask the court to remand the case again to the Department of Commerce (the "Department" or "Commerce"), with instructions to eliminate this portion of the by-product offset from its calculation of normal value.  Commerce, together with plaintiffs/defendant-intervenors Arch Chemicals, Inc. and Jiheng ("plaintiffs"), ask the court to sustain the grant of the offset.  Jurisdiction is had pursuant to 28 U.S.C. § 1581(c) (2006) and 19 U.S.C. § 1516a(b)(1)(B)(i).

For the reasons that follow, the Final Results of Redetermination Pursuant to Court Order Granting Voluntary Remand (the "Second Remand Results") are sustained in part and remanded.

BACKGROUND

In Arch Chemicals I, the court sustained in part and remanded the final results of the first administrative review of the antidumping duty order on chlorinated isocyanurates from the People's Republic of China ("PRC").  See Chlorinated

---

[2] "Chlorinated isocyanurates are derivatives of cyanuric acid, described as chlorinated s-triazine triones. . . . [They are] available in powder, granular, and tabled forms." Arch Chemicals I, 33 CIT at __, Slip Op. 09-71 at 3 n.1 (citation omitted).

Consol. Court No. 08-00040                                      Page 4

Isocyanurates from the PRC, 73 Fed. Reg. 159 (Dep't of Commerce Jan. 2, 2008) (final results of antidumping duty administrative review); Chlorinated Isocyanurates from the PRC, 73 Fed. Reg. 9,091 (Dep't of Commerce Feb. 19, 2008) (amended final results of antidumping duty administrative review). Notably, on remand, the court instructed Commerce to "reexamine each of Jiheng's claimed by-product offsets." *Arch Chemicals I*, 33 CIT at __, Slip Op. 09-71 at 44.

Commerce filed the Final Results of Redetermination Pursuant to Court Order (the "First Remand Results") on December 22, 2009. In the First Remand Results, the Department concluded that Jiheng was eligible for by-product offsets for its production of chlorine, ammonia gas, hydrogen, and recovered sulfuric acid. In their comments on the First Remand Results, both the plaintiffs and defendant-intervenors challenged a number of issues. In response to these comments, the Department asked for a voluntary remand to reexamine the issues raised by the parties. Commerce filed the Second Remand Results on June 21, 2010.

In the Second Remand Results, the Department found that: (1) Jiheng was eligible for by-product offsets for the portions of hydrogen and chlorine gas that were recycled in the production of hydrochloric acid; (2) Jiheng's sulfuric acid by-product surrogate value should be revalued to reflect properly the purity level of the sulfuric acid by-product reported by Jiheng; and (3)

Jiheng should receive a by-product offset for that portion of chlorine gas discharged during chlorine liquefaction. Second Remand Results at 1–2. Plaintiffs fully support the Second Remand Results and defendant-intervenors challenge only the third determination.

## STANDARD OF REVIEW

The court must uphold a final determination by the Department in an antidumping proceeding unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence does not exist when "Commerce's conclusion is not based on a reasonable inference drawn from the evidence in the record." *Rhodia, Inc. v. United States*, 28 CIT 1278, 1283, 185 F. Supp. 2d 1343, 1349 (2001).

## DISCUSSION

I.  By-Product Offsets

> The antidumping statute "does not mention the treatment of by-products," and Commerce has not filled the statutory gap with a regulation. *See Guangdong Chems. Imp. & Exp. Corp. v. United States*, 30 CIT 1412, 1422, 460 F. Supp. 2d 1365, 1373 (2006). Generally, however, the Department's practice has been to grant an offset to normal value, *for sales of by-products generated during the production of subject merchandise*, if the respondent can demonstrate that the by-

> product is either resold or has commercial
> value and re-enters the respondent's
> production process. *See Ass'n of Am. School
> Paper Suppliers v. United States*, 32 CIT __,
> __, Slip Op. 08-122 at 17 (Nov. 17, 2008)
> (not reported in the Federal Supplement).
> Thus, the burden rests with the respondents
> (here, the plaintiffs) to substantiate by-
> product offsets by providing the Department
> with sufficient information to support their
> claims. *See id.* at __, Slip Op. 08-122 at
> 18-23.

*Arch Chemicals I*, Slip Op. 09-71 at 6 (footnote omitted) (emphasis added).


II. Jiheng's By-Product Offset for Impure Chlorine Gas Discharged During Liquefaction

Defendant-intervenors argue that Commerce's decision to grant a by-product offset for impure chlorine gas discharged at the chlorine liquefaction stage of Jiheng's manufacturing process is not supported by substantial evidence because "it is based on a factually incorrect characterization of the stage of production at which the by-product is produced." Comments of Clearon Corporation and Occidental Chemical Corporation Regarding Final Results of Second Redetermination Pursuant to Court Remand ("Def.-Ints.' Comm.") 2. Specifically, defendant-intervenors contend that because liquefaction is not part of the production of subject merchandise, but rather part of the production of a separate product, i.e., liquid chlorine, "Commerce should not have used the value of the by-product resulting from this part of

Consol. Court No. 08-00040                                          Page 7

the manufacturing process to offset the cost of producing subject merchandise." Def.-Ints.' Comm. 2.

As defendant-intervenors describe the process, "Jiheng uses purified chlorine gas to produce two distinct main products: chlorinated isocyanurates (the subject merchandise) and liquid chlorine sold in bottles." Def.-Ints.' Comm. 2. In the course of producing the two products, Jiheng generates impure chlorine gas.[3] Def.-Ints.' Comm. 3. According to defendant-intervenors, "there is a clear separation between Jiheng's production of subject merchandise and its production of liquid chlorine." Def.-Ints.' Comm. 4. They insist that, although both processes use purified chlorine gas as an input, "production of the two products is entirely separate following the purification of chlorine gas." Def.-Ints.' Comm. 4.

Based on their characterization of the production process, defendant-intervenors contend that Commerce should not have granted Jiheng a by-product offset for the impure chlorine gas discharged at liquefaction because "[i]t is axiomatic that a by-product must be an unavoidable outcome of the respondent's production of subject merchandise in order to receive a by-product credit." Def.-Ints.' Comm. 6. As further stated by

---

[3] Impure chlorine gas is produced during several stages of the manufacturing process, but defendant-intervenors only object to the by-product offset for the impure chlorine gas discharged at the liquefaction stage.

Consol. Court No. 08-00040                                          Page 8

defendant-intervenors, "[l]iquefaction relates solely to the production of liquid chlorine for sale, and neither the purified chlorine gas used for liquefaction nor the liquid chlorine itself is ever used in the production of subject merchandise." Def.-Ints.' Comm. 6.

Commerce, meanwhile, asks the court to sustain the Second Remand Results, asserting that the Department properly granted an offset for impure chlorine gas discharged during liquefaction because it was generated during the production of the subject merchandise. Defendant's Reply to Clearon Corporation's Comments on Second Remand Results ("Def.'s Rep.") 5. Most significantly, Commerce takes issue with defendant-intervenors' characterization of the production process. According to the Department, chlorine gas is first generated as a result of electrolysis, which occurs at an early point in the production process. For Commerce, the impure chlorine gas that is later discharged during liquefaction was nothing more or less than the chlorine gas that had been subject to further processing. According to the Department,

> Commerce determined that though the liquefaction of chlorine gas was not related to the production of subject merchandise, the impure chlorine gas discharged at this stage was created during electrolysis, not during liquefaction, because liquefaction was merely a further processing of chlorine gas created during electrolysis. Because the costs of the inputs that undergo electrolysis are captured in the factors of production for subject merchandise, the costs of producing

>       the discharged impure chlorine gas are
>       attributable to subject merchandise
>       production.

Def.'s Rep. 4 (citations omitted).


III. Analysis

    The remaining question in this case is whether the impure chlorine gas that resulted in the disputed credit is discharged during the production of subject merchandise.  As this Court has held, under the Department's methodology, the key to determining if a substance is eligible to be treated as a by-product is "whether the respondent's production process for subject merchandise actually generated the amount of [by-product] claimed as a by-product offset." *Mid Continent Nail Corp. v. United States*, 34 CIT __, __, Slip Op. 10-47 at 19 (May 4, 2010) (not reported in the Federal Supplement) (citation omitted).  Here, the court agrees with defendant-intervenors that this by-product does not result from the production of subject merchandise.  That is, because the impure chlorine gas, that is the subject of the disputed credit, was discharged at a production stage that resulted solely in the production of non-subject merchandise, the gas is ineligible for the credit Commerce granted.

    That this is the case is most clearly illustrated by referencing the following, greatly simplified, schematic:

Consol. Court No. 08-00040                                          Page 10



As can be seen, chlorine gas is produced by electrolysis early in the process (A, B). Thereafter, the chlorine gas is purified (C), but then the process branches into two parts. One branch results in subject merchandise (H), and impure chlorine gas (D) is discharged. No party disputes that plaintiff should

receive an offset for the impure chlorine gas discharged at (D).

The other branch of Jiheng's process, however, results in the production of liquid chlorine (I), which is non-subject merchandise that Jiheng offers for sale. During the liquefaction process (F) that results in this liquid chlorine, impure chlorine gas (G) is also discharged as a by-product. The Department insists that because the impure chlorine gas generated at (G) is derived from the chlorine gas (B) that is produced during purification (C), an offset is warranted. It is apparent, however, that substantial evidence does not support this result. Jiheng produces two products,[4] not one, from the purified chlorine gas, and the impure chlorine gas that is the subject of the credit is derived from the production of the second product, liquid chlorine.

In reaching this conclusion, the court is mindful that all parties agree that were plaintiff to manufacture only the volume of subject merchandise that was the object of this review, it would have consumed less purified chlorine gas than was actually used during the dual processes that resulted in the subject merchandise and in the liquid chlorine. Tr. of Civ. Cause for Or. Arg. at 8, 21, 29. In other words, the chlorine gas that is diverted, after purification, from production of subject merchandise to production of bottled chlorine gas, is in excess

---

[4]     Jiheng, in fact, produces more than two products.

of the amount required to make subject merchandise. While the amount of purified chlorine gas used in the production of the liquid chlorine is apparently not quantified on the record, the fact remains that more purified chlorine gas is consumed in the production of both subject and non-subject merchandise than would be needed to produce subject merchandise alone. Thus, the impure chlorine gas that results from production of liquid chlorine is also in excess of what would have been discharged had Jiheng only produced the subject merchandise. Thus, the impure chlorine gas that resulted was not a by-product discharged during the production of subject merchandise. Rather, it was a by-product of the production of liquid chlorine.

Commerce's arguments to the contrary are not persuasive. The Department's primary argument is that, because the cost of the inputs used to make the chlorine gas from which all of the impure chlorine gas was later discharged were all incurred prior to liquefaction, the cost of making the impure chlorine gas was accounted for prior to liquefaction—and thus should provide an offset to the subject merchandise. This argument, however, is undermined by its treatment of the impure chlorine gas discharged at the purification stage (J). The gas discharged at that point is not the subject of an offset to the subject merchandise alone, but is allocated between subject and non-subject merchandise. *See* Def.-Ints.' Comm. 6 ("Because purification is common to the

production of both subject merchandise and liquefied chlorine, Commerce correctly allocated only a portion of this by-product to subject merchandise.").[5] Thus, it is difficult to see why the allocation made at (J) would not have been continued by excluding the impure chlorine gas discharged from the manufacture of the non-subject merchandise from the by-product offset.

In addition, because Jiheng's process consumes more purified chlorine gas than would be needed to produce the subject merchandise alone, the Department's argument that the costs associated with the eventual discharge of the impure chlorine gas were incurred early in the process lose their force. As noted, it is undisputed that the sole reason for the liquefaction process is to produce the liquid chlorine. That being the case, it is apparent that the discharge of the impure chlorine gas, for which the disputed offset was granted, was unrelated to the

---

[5] Commerce and plaintiffs argue that defendant-intervenors failed to exhaust their administrative remedies regarding an argument raised about the allocation at (G) because defendant-intervenors only raised this argument about inconsistent allocation methodologies in their comments on the draft of the Second Remand Results, but not in any of the earlier administrative proceedings. However, the cases cited in support of their failure to exhaust claim, *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) and *Bridgestone Americas, Inc. v. United States*, 34 CIT __, 710 F. Supp. 2d 1359 (2010), involved situations where the parties invoked arguments in court they simply *never* raised at the administrative level, as opposed to defendant-intervenors only raising them to the agency in a later remand, but not an earlier one. The court is satisfied that defendant-intervenors properly exhausted their administrative remedies by raising this issue first at the agency level.

Consol. Court No. 08-00040                                    Page 14

production of subject merchandise.  Thus, it appears that those costs were incurred to produce two products, only one of which is subject merchandise.  Therefore, it is immaterial that the costs to produce all of the chlorine gas were incurred at a point in Jiheng's process before it branched into the production of two products.  What matters is that the by-product was not generated in the production of subject merchandise.

The court finds Commerce's grant of a by-product offset for impure chlorine gas discharged as a result of liquefaction of purified chlorine gas is not supported by substantial evidence. Commerce is directed on remand to eliminate that portion of the chlorine gas by-product offset relating to impure gas discharged during liquefaction (G) and recalculate the antidumping margin for Jiheng on that basis.

CONCLUSION

The Department's two uncontested determinations, regarding the eligibility for by-product offsets for the portions of hydrogen and chlorine gas that were recycled in the production of hydrochloric acid and the revaluation of Jiheng's sulfuric acid by-product surrogate value, are sustained.  For the reasons stated, Commerce's Second Remand Results are remanded as to the by-product offset relating to impure chlorine gas discharged during liquefaction.  Remand results are due on or before July

Consol. Court No. 08-00040                                          Page 15

15, 2011.  Comments to the remand results are due on or before August 15, 2011.  Replies to such comments are due on or before August 29, 2011.

                                              /s/ Richard K. Eaton
                                                Richard K. Eaton

Dated:   April 15, 2011
        New York, New York